UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81356-CIV-MARRA

FIRST SPECIALTY INSURANCE
CORPORATION,

Plaintiff,

vs.

GRS MANAGEMENT ASSOCIATES, INC.,
NAUTICA ISLES WEST HOMEOWNERS
ASSOCIATION, INC., and JEANNINE LE
and THYNG LE, individually and as parents
natural and legal guardians of THAILOR LE,
a minor,

Defendants.
_____/

PHILADELPHIA INDEMNITY INSURANCE
COMPANY, a Pennsylvania corporation,

Plaintiff,

vs.

NAUTICA ISLES WEST CONDOMINIUM
ASSOCIATION, INC., GRS MANAGEMENT
ASSOCIATES, INC. and JEANNINE LE
and THYNG LE, individually and as parents
natural and legal guardians of THAILOR LE,
a minor,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon First Speciality Insurance Corporation's ("FSIC")

Motion for Partial Summary Judgment (DE 10) and Philadelphia Indemnity Insurance

Company's ("PIIC") Amended Motion for Summary Final Judgment (DE 89).  The motions are fully briefed and ripe for review.  The Court held oral argument on the motions on July 24, 2009.  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I. Background

The facts, as culled from the exhibits provided and reasonably inferred therefrom in a light most favorable to Defendants, for the purpose of this motion, are as follows:

On or about May 20, 2008, the Nautica Isles West Homeowners Association, Inc. ("the Association") and GRS Management Associates, Inc. ("GRS") were named as defendants in an action styled *Jeannine Le and Thailor Le, et al. v. Nautica Isles West Homeowners Association, Inc. et al.*, Case No. 2008 CA 014580XXXMB brought before the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida.  (State court complaint, Ex. A to DE 96.)  The Association is a homeowners association for the residential community known as Nautica Isles West located in Greenacres, Florida. (State court compl. ¶ 4.)  GRS is the property management company which at all relevant times managed the Association's property, including its swimming pool. (State court compl. ¶¶ 15-17.)  With respect to the Association and GRS, the Le complaint alleges, among other things, the following:

> Defendant knew or should have known that said swimming pool was improperly maintained and posed a substantial health risk to the health, safety and welfare of those individuals swimming in the defendant's swimming pool. (State court compl. ¶¶ 8, 20.)

> On or about June 1, 2004 . . . Thailor Le was swimming in the Defendant's swimming pool when Thailor Le was exposed to the dangerous, hazardous, and unsafe sanitary conditions of the Defendant's swimming pool. (State court compl. ¶¶ 10, 22.)

In pre-suit correspondence, Le's counsel advised GRS that Thailor Le was injured "after he contracted a viral infection from contaminants within the water of the Nautica Isles West

community pool."[1] (Mar. 4, 2008 letter, Ex. B-1, attached to DE 96.) An expert toxicologist's report submitted by the Les stated that Thailor Le contracted the Coxsackie virus as a result of ingesting swimming pool water in the Nautica Isles West community swimming pool. In addition, the expert report stated that chlorination of swimming pool water is "an effective way to kill harmful microbes, including Coxsackie viruses." (Harold I. Zeliger Letter, Ex. B-3, attached to DE 96.)

PIIC issued a primary general liability policy number PHPK053395 to the Association as the Named Insured; GRS also qualified as an insured under this policy. (PIIC Policy, DE 73.) PIIC's primary policy covered the period of June 30, 2003 to June 30, 2004 and provided coverage for "bodily injury" in the amount of $1,000,000.00 per occurrence. The primary policy contained the following Total Pollution Exclusion Endorsement (form CG 21 49 09 99) (NI-0094, Exhibit C, DE 96.):

> 2. Exclusions
>
> This insurance does not apply to:
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

The term "pollutant" is defined in the policy as follows:

> SECTION V - DEFINITIONS
>
> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including

---

[1] The letter also requested insurance information pursuant to Florida Statute § 627.4137 and information regarding third-parties who might be liable for Thailor Le's injuries.

smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. (Exhibit C, p. NI-0086)

PIIC also issued to the Association an excess liability policy number PHUB020208, which covered the same period of time and which provided an additional $2,000,000 in coverage. (DE 73.)   The excess policy contains a similar pollution exclusion which provides as follows:

3. Exclusions

This insurance does not apply to:

(p)  "Bodily injury", "personal injury" or "property damage" arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants.

We shall have no obligation under this policy:

(1)  To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the "pollution hazard", or,

(2)  To pay any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit of any such injury or damage, or in complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion:

"Pollution hazard" means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties to any solid, liquid, gaseous or thermal pollutants, contaminants, irritants or toxic substances, including smoke, vapors, soot, fumes, acids or alkalis, and waste materials consisting of or containing any of the foregoing.

(NI-0124, Ex. D, DE 96.)

With respect to FSIC, under policy number FCP211000647200, effective December 5,

2003 to December 5, 2004, FSIC provided commercial general liability coverage to GRS pursuant to a Commercial General Liability Coverage Form, form no. CG 00 01 10 01. The named insured on the policy is G.R.S. Management Associates. (Policy, Ex. C, DE 11.)

The Commercial General Liability Coverage Form provides in relevant part:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

The First Specialty policy contains a Total Pollution Exclusion Endorsement, form no. CG 21 49 09 99, which provides in pertinent part as follows:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

The First Specialty policy contains the following definitions:

SECTION V – DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
14. "Personal and advertising injury" means injury, including consequential "bodily injury"…
15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Policy, Ex. C, DE 11.)

II.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

III.  Discussion

FSIC moves for partial summary judgment, seeking a ruling that it has no duty to indemnify any insured in connection with the Le's claims in the underlying state court action.  PIIC moves for summary judgment on both its duty to defend and to indemnify for the claims asserted in the underlying state court action.  Before interpreting the insurance policies, however, the Court must first address the facts presented regarding the underlying state case.

The state court complaint alleged that Thailor Le was injured as a result of exposure to "dangerous, hazardous, and unsafe sanitary conditions" in the community swimming pool.  (State court compl. ¶¶ 10, 22.)   Specifically, Thailor Le "contracted a viral infection from contaminants within the water of the Nautica Isles West community pool." (Mar. 4, 2008 letter.) This viral infection was identified as the Coxsackie virus, which was contracted from "ingesting swimming pool water in the Nautica Isles West community swimming pool."  Significantly, chlorination of swimming pool water is an "an effective way to kill harmful microbes, [such as the] Coxsackie viruses." (Harold I. Zeliger Letter.)

Despite Defendants' protestations, it is proper for the Court to consider this evidence.

Neither the pre-suit letter nor the letter from the expert, Mr. Zeliger, is barred under Rule 408 of the Federal Rules of Evidence.  To begin, the pre-suit letter made no offer to compromise or settle the Le's claim.  Instead, the letter merely requested that GRS provide the Le's attorney with insurance information pursuant to Florida Statute § 627.4137 and information regarding the existence of any third-parties who may be liable for Thailor Le's injuries.  Next, despite Defendants' complaint that Mr. Zeliger's letter was attached to the settlement demand letter,[2] that fact, if true, would not require the exclusion of this letter under Rule 408 of the Federal Rules of Evidence.  Indeed, evidence presented during settlement negotiations does not prevent its discovery and use as long as that evidence is otherwise discoverable.  See NAACP Legal Defense Fund and Education Fund, Inc. v. United States Dept. of Justice, 612 F. Supp. 1143 (D.D.C. 1985) ("Although the intent of Fed. R. Evid. 408 is to foster settlement negotiations, the sole means used to effectuate that end is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial. It was never intended to be a broad discovery privilege."); 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 408.07 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2005).  Thus, in determining insurance coverage, the Court will consider the admissions by the Les that Thailor Le's injuries were caused by a viral contaminant and/or microbe.

      Turning now to the coverage issue, the Court begins, as it must, by looking to the

---

[2] The Court is not considering the demand letter submitted by FSIC and PIIC (Demand Letter, Ex. B, DE 11; Demand Letter, Ex. B-2, DE 96).  There is, however, a factual dispute as to whether Mr. Zeliger's letter was attached to the demand letter.  Of course, on a motion for summary judgment, the Court must take the facts in the light most favorable to the non-moving party.  Thus, the Court will assume, for the purpose of these motions, that Mr. Zeliger's letter was attached to the demand letter.

language of the insurance contract.  Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the Court.  <u>Gas Kwick, Inc. v. United Pac. Inc. Co.</u>, 58 F.3d 1536, 1539 (11th Cir.1995).  "When an insurance contract is not ambiguous, it must be given effect as it is written."  <u>Siegle v. Progressive Consumers Ins. Co.</u>, 819 So.2d 732, 735 (Fla. 2002).  An operative term is not ambiguous by virtue of the fact that it is not defined. <u>Swire Pacific Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 166 (Fla. 2003); <u>see</u> <u>Jefferson Ins. Co. v. Sea World</u>, 586 So.2d 95, 97 (Fla. Dist. Ct. App. 1991) ("The mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous"). Simply put, "where the language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses." <u>Fla. Farm Bureau Ins. v. Birge</u>, 659 So.2d 310, 312 (Fla. Dist. Ct. App.1994).

As defined under the plain language of the policy, the meaning of the term pollutant includes contaminant.  Furthermore, cases from this jurisdiction have ruled that similar pollutant clauses encompass "contaminants" and microbes.  <u>See</u>, e.g., <u>Philadelphia Indemnity Insurance Co. v. Yachtman's Inn Condo Ass'n Inc.</u>, 595 F. Supp. 2d 1319 (S.D. Fla. 2009) (concluding that feces, raw sewage and battery acid fall within the policy pollutant definition of irritant or contaminant); <u>Nova Casualty Co v. Waserstein</u>, 424 F. Supp. 2d 1325, 1333-34 (S.D. Fla. 2006) (finding "living organisms," "*microbial* populations," "airborne and *microbial contaminants*," and "indoor allergens" fit the definition of "contaminant" and are excluded from coverage under the pollution exclusion clause); <u>Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.</u>, 711 So. 2d 1135, 1139 (Fla. 1998) (rejecting the argument that the pollutant exclusion is

9

ambiguous because the word "contaminant" is not defined).[3] (emphasis added)  Clearly, the record evidence demonstrates that the substance in the swimming pool was a viral contaminant and a harmful microbe. Thus, the pollutant exclusion applies here.[4]

It is important to note that Defendants have not presented any evidence which would raise a genuine issue of material fact as to the cause of Thailor Le's injuries.  The procedural posture they have chosen to take is merely to assert that Plaintiffs have not proven the cause of the injuries.  Plaintiffs, however, have relied upon admissions from the Les, the parties claiming the injury and the parties in the best position to know the cause.  There is no reason why Plaintiffs should not be entitled to rely upon admissions from the parties claiming the injury to prove causation in this case.  No Defendant has even suggested that the injury had a different cause.  Nor can Defendants rely upon a lack of discovery taken in this proceeding.  The rule that granting summary judgment is improper before a party has had an adequate opportunity to take discovery applies in cases where the evidence necessary to respond to the summary judgment motion is not within the non-moving party's possession, custody or control.  Fed. R. Civ. P. 56(f); see Walters v. City of Ocean Springs, 626 F.2d 1317, 1321 (5th Cir. 1980)[5] (a Rule 56(f) motion is more

---

[3] The Court chooses not to follow Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785, 789 (Ariz. App. Div. 2000) (finding water-borne bacteria did not fit within definition set forth in pollutant exclusion) as suggested by the Le Defendants.

[4] The Court need not address FSIC's argument that the fungi or bacteria exclusion endorsement applies to the facts of this case.

[5] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

likely to be granted when relevant facts are in exclusive control of the opposing party). Here, the information relating to the cause of Thailor Le's injuries is within the control of the Le Defendants and it is the evidence that they have produced which is being used to support Plaintiff's motion. For example, the Le Defendants have used Dr. Zeliger's report in the state court action to support their theory of causation.[6] The other Defendants, who have litigated against the Les in the underlying state court proceeding and had the opportunity to conduct discovery there to determine another cause, have presented nothing to suggest a record could be developed in this case which might create a genuine issue of material fact regarding causation.

Based on the foregoing, the Court finds that the pollution exclusion of both FSIC and PIIC's policies unambiguously apply to contaminant allegedly present in the swimming pool. Thus, the Court concludes that PIIC has shown that it has no duty to defend or indemnify and FSIC has shown that it has no duty to indemnify in the underlying litigation.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) FSIC's Motion for Partial Summary Judgment (DE 10) is **GRANTED**. FSIC shall inform the Court **within 10 days from the date of entry of this Order** as to how this case should proceed.

2) PIIC's Amended Motion for Summary Final Judgment (DE 89) is **GRANTED.**

---

[6] At the oral argument, the parties informed the Court that this evidence was stricken in the state case, however, that fact does not change the Court's analysis in this case.

The Court will separately issue judgment for PIIC.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of August, 2009.

_____
KENNETH A.  MARRA
United States District Judge